1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHUBHAM KAUSHIKKUMAR PATEL,

                              Petitioner,

              v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

                              Respondents.

Case No. C19-1690-MJP-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, a native and citizen of India, brings this 28 U.S.C. § 2241 immigration habeas action through counsel to challenge his expedited removal order and continued detention at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.[1] (*See* Pet. (Dkt. # 2).) The Court stayed his removal pending adjudication of his claims. (Dkt. # 3.) The Government has filed a return memorandum and motion to dismiss. (MTD (Dkt. # 5).) Petitioner did not file an opposition. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be GRANTED,

---

[1] NWIPC was previously known as the Northwest Detention Center.

REPORT AND RECOMMENDATION - 1

1  Petitioner's habeas petition be DENIED, the stay of removal be VACATED, and this action be

2  DISMISSED with prejudice.

3                          II.      BACKGROUND

4          On August 20, 2019, Petitioner entered the United States without inspection by crossing

5  the U.S.-Canada border near Sumas, Washington. (Lambert Decl. (Dkt. # 6), Ex. A.) The same

6  day, a U.S. Customs and Border Patrol ("CBP") agent encountered Petitioner and arrested him

7  after determining that he entered the United States illegally. (*Id.*) After being transported to the

8  Sumas Border Patrol Station, two CBP agents interviewed Petitioner under oath in Hindi. (*Id.*,

9  Exs. A, B.) Petitioner alleged a fear of returning to India. (*Id.*, Ex. B.) As a result, a CBP agent

10  processed him for expedited removal under 8 U.S.C. § 1225(b)(1) and referred him for an

11  interview with a U.S. Citizenship and Immigration Services ("USCIS") asylum officer ("AO") to

12  determine whether he had a credible fear of persecution. (*Id.*, Exs. A, C.) The agent also served

13  Petitioner with Form I-867, a copy of his sworn statement (*id.*, Ex. B); Form I-860, Notice and

14  Order of Expedited Removal (*id.*, Ex. C); Form I-296, Notice to Alien Ordered Removed/

15  Departure Verification (*id.*, Ex. D); Form M-444, Information about Credible Fear Interview (*id.*,

16  Ex. E); and a list of pro bono legal service providers (*id.*, Ex. A at 4). An interpreter read Forms

17  I-867 and M-444 to Petitioner in Hindi, and Petitioner acknowledged understanding the

18  documents. (*Id.*) Shortly thereafter, CBP agents transferred Petitioner to the NWIPC. (*Id.*)

19          On September 4, 2019, an AO from USCIS's San Francisco Asylum Office conducted a

20  credible fear interview of Petitioner. (*Id.*, Ex. F.)[2] The AO conducted the interview over the

21  telephone through a Gujarati interpreter. (*Id.* at 1.) After placing Petitioner under oath, the AO

22  asked whether he had anyone helping him with his case. (*Id.* at 2.) Petitioner replied that he did

23

---

[2] The AO's Pre-screening Interview Notes are not a verbatim recording of the interview but provide the AO's contemporaneous account of the questions and answers. (*See* Lambert Decl., Ex. F at 1.)

1  not but planned to hire an attorney in the future. (*Id.*) The AO asked whether Petitioner spoke

2  any languages other than Gujarati, and Petitioner replied that he did not. (*Id.*) In response to

3  questions from the AO, Petitioner stated that he had filed two visa applications to come to the

4  United States and that all the information on the applications was correct. (*Id.* at 2-3.) The AO

5  then stated that Petitioner's applications indicated he spoke Hindi and English, in addition to

6  Gujarati. (*Id.*) The AO asked Petitioner to explain the inconsistency between his visa

7  applications and his interview answer. (*Id.*) Petitioner stated that "it might have been written by

8  mistake. I only speak Gujarati." (*Id.*) The AO next asked what language Petitioner spoke when

9  the CBP agents detained him after he first crossed into the United States. (*Id.*) Petitioner

10  answered, "Gujarati." (*Id.*) The AO asked why the paperwork from his interview with the CBP

11  agents stated Petitioner spoke in Hindi. (*Id.*) Petitioner responded, "As I mentioned earlier, I said

12  I speak a little bit of Hindi." (*Id.*) Petitioner explained that he did not understand the AO's

13  question and thought she was asking what language he was speaking with the others with whom

14  he crossed the border. (*Id.*) The AO asked Petitioner to explain the inconsistency in his

15  statements regarding the languages he speaks. (*Id.*) Petitioner stated that he misunderstood the

16  question and that he does speak Hindi, "but it is not very clear . . . . My main language is

17  Gujarati but I can understand and speak Hindi as well, a little bit." (*Id.*)

18       The interview then turned to Petitioner's fear of returning to India. Petitioner explained

19  that his father borrowed money from a man named Ajay Jadaja and lost it through gambling. (*Id.*

20  at 4.) Petitioner reported that Mr. Jadaja is politically connected through the Bharatiya Janata

21  Party ("BJP") and threatened to kill Petitioner if he did not repay the money his father borrowed.

22  (*Id.* at 4-5.) Petitioner stated that in April 2019, Mr. Jadaja slapped and beat him, but he was able

23  to run away. (*Id.* at 5.) Petitioner stated that he tried to report the attack to the police, but the

police told him to return Mr. Jadaja's money and refused to take his report because of Mr.

Jadaja's political connections. (*Id.*) Petitioner also stated that the police "threatened him on top."

(*Id.*) The AO asked what this meant, and the following exchange occurred:

> Q. You said the police threatened you on top?
> A. Yes. Police has given me a written threat.
>
> Q. What did the police threaten to do?
> A. We tried to file a complaint and the police threatened me.
>
> Q. What did the police threaten to do to you?
> A. The police said whatever money you owe, give him his money back otherwise
> we are filing another case and we are going to do that.
>
> Q. How did you receive this threat?
> A. Initially this threat gave me on the phone, which threat are we talking about?
> The police threat?
>
> Q. I am talking specifically about the police threat. How did you receive this
> threat?
> A. When we went to file the police case, we received this threat.
>
> Q. Just a moment ago, you said that the police gave you a written threat. Can you
> explain this inconsistency?
> A. I did not say this was written. **[Interpreter unprompted says that he said
> that]** At that time they said verbally, while I was trying to file a case.

(*Id.* at 6 (emphasis in original).) This inconsistency came up again at the end of the interview.

(*Id.* at 8.)

    Petitioner also described a second attack in June 2019. (*Id.* at 6.) Petitioner stated that Mr.

Jadaja came to his house with four or five men and attacked him at night while he was sleeping;

they started to beat him with a wooden stick, and neighbors came to rescue him after he started

shouting. (*Id.*) Petitioner described no other attacks. (*Id.* at 7.) Petitioner stated that he would not

have any problems in India because of his political opinion. (*Id.* at 8.)

    On September 11, 2019, Petitioner received Form I-869, Record of Negative Credible

Fear Finding. (Lambert Decl., Ex. I.) The form indicated that the AO determined Petitioner's

1  testimony was not credible. (*Id.* ("Considering the totality of the circumstances and all relevant

2  factors, you have not established that your testimony is credible.").) An interpreter read and

3  explained the contents of the form to Petitioner over the telephone. (*Id.*) Petitioner also received

4  Form I-870, Record of Determination/Credible Fear Worksheet, which explained that Petitioner

5  was found not credible because his testimony was internally inconsistent on material issues. (*Id.*,

6  Ex. G.) Thus, Petitioner failed to establish a credible fear of persecution. (*Id.*)

7      Petitioner requested that an immigration judge ("IJ") review the AO's decision. (Lambert

8  Decl., Ex. I; *see also id.*, Ex. J.) Prior to the credible fear review hearing ("Review Hearing"), the

9  IJ received all the documents Petitioner had received, as well as the Credible Fear Determination

10 Checklist and Written Analysis, an internal document explaining the basis for the AO's adverse

11 credibility finding. (*Id.*, Ex. H.) On the Checklist, the AO highlighted the inconsistencies she had

12 discussed with Petitioner during the interview, namely how the police allegedly threatened him and

13 the languages he speaks. (*Id.*)

14     On September 19, 2019, Petitioner appeared for his Review Hearing where he was

15 represented by counsel. (Lambert Decl., Exs. K, L.)[3] The IJ accepted Petitioner's evidence

16 packet, which included sworn statements from his mother, his uncle, and his aunt, attesting to the

17 harm he suffered "at the hands of people who have political power and support of the ruling

18 party, the BJP and police connections." (Pet. at 9, 12.) After hearing testimony from Petitioner

19 and argument from his counsel about his credible fear claim, the IJ found that Petitioner had not

20 established a significant possibility that he would be persecuted on the basis of a protected

21 ground or subjected to torture if he returned to India. (Lambert Decl., Exs. K, L.) The IJ affirmed

22

23

---

[3] Exhibit L is an audio recording of the Review Hearing.

REPORT AND RECOMMENDATION - 5

1    the AO's decision and returned the case to the U.S. Department of Homeland Security ("DHS")

2    for removal. (*Id.*, Ex. K.)

3          On October 21, 2019, Petitioner initiated the instant action and filed a motion seeking a

4    stay of removal, which the Court granted. (Dkt. ## 1-3.) In his habeas petition, he alleges that his

5    Fourth and Fifth Amendment rights were violated "in disregard of substantive and procedural

6    due process" (Pet. at 2) and that he was ordered removed without a "meaningful opportunity to

7    demonstrate that [he] is being held pursuant to the erroneous application or interpretation of

8    relevant law" (*id.* (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))). Petitioner faults the

9    AO for failing to explore how Mr. Jadaja's attacks were tied to the BJP; for focusing on his prior

10   visa applications and the languages he spoke, which he claims were not relevant to his fear of

11   return to India; for failing to express concern that the CBP agents interviewed him in Hindi,

12   which he speaks only a little; and for not dismissing the interpreter and conducting a new

13   interview after the interpreter interjected. (*Id.* at 5-7.) Petitioner also alleges there is no

14   reasonable basis for the AO's adverse credibility finding and claims the AO failed to explain her

15   reasoning. (*Id.* at 9.) He claims that he testified credibly. (*Id.* at 9, 11.) He further argues that the

16   Review Hearing occurred after the statutorily prescribed deadline and that the IJ ignored his

17   evidence packet. (*Id.* at 8.) Finally, he alleges that his detention is unlawful. (*Id.* at 13.)

18         The Government timely moved to dismiss and vacate the stay of removal. (*See generally*

19   MTD.) Petitioner did not file a response.

20                              **III.    DISCUSSION**

21   **A.  Expedited Removal Proceedings**

22         There is no dispute that Petitioner is an "applicant for admission"—a noncitizen who

23   "arrive[d] in the United States," or is "present" in the United States but has "not been admitted."

1    8 U.S.C. § 1225(a)(1). An applicant for admission who is unable to affirmatively show, to the

2    satisfaction of an immigration officer, that he or she "has been physically present in the United

3    States continuously for the 2-year period immediately prior to the date of the determination of

4    inadmissibility," 8 U.S.C. § 1225(b)(1)(A)(iii)(II), is generally subject to an expedited removal

5    process that does not include a hearing before an IJ or review of the removal order, 8 U.S.C. §

6    1225(b)(1)(A)(i). If, however, the noncitizen "indicates either an intention to apply for asylum

7    . . . or a fear of persecution," the inspecting immigration officer must refer the noncitizen for an

8    interview with an AO. 8 U.S.C. § 1225(b)(1)(A)(ii); *see also* 8 C.F.R. §§ 235.3(b)(4), 208.30(d).

9         The AO interviews the noncitizen, reviews relevant facts, and determines whether the

10   noncitizen has a credible fear. *See* 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. § 208.30. The purpose of

11   the interview is to "elicit all relevant and useful information bearing on whether the applicant has

12   a credible fear of persecution or torture." 8 C.F.R. § 208.30(d). The AO must conduct the

13   interview in a nonadversarial manner and in a language chosen by the noncitizen. 8 C.F.R. §§

14   208.30(d), (d)(5). At the time of the interview, the AO must verify that the noncitizen has

15   received Form M-444, Information about Credible Fear Interview in Expedited Removal Cases,

16   and understands the credible fear determination process. 8 C.F.R. § 208.30(d)(2). The noncitizen

17   may present evidence and consult with any person of his or her choosing prior to the interview,

18   at no expense to the government, so long as it does not unreasonably delay the process, and any

19   person with whom the noncitizen consults may be present at the interview. 8 C.F.R. §

20   208.30(d)(4). The AO must create a summary of the material facts presented by the noncitizen. 8

21   C.F.R. § 208.30(d)(6). At the end of the interview, the officer must review the summary with the

22   noncitizen and give him or her an opportunity to correct any errors. *Id.*

23        A credible fear of persecution or torture is established where there is a "significant

possibility," taking into account the credibility of the noncitizen's testimony and other facts known to the AO, that the noncitizen could establish eligibility for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), or withholding or deferral of removal under the Convention Against Torture. 8 C.F.R. §§ 208.30(e)(2), (3); *see* 8 U.S.C. § 1225(b)(1)(B)(v). The noncitizen's testimony may be sufficient to sustain his or her burden of proof if it is "credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii) (credibility standard applicable under 8 U.S.C. § 1225(b)(1)(B)(v)). Considering the totality of the circumstances and all relevant factors, an AO may base a credibility determination on:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

After the interview, the AO must create "a written record of his or her determination, including a summary of the material facts as stated by the applicant, any additional facts relied on by the officer, and the officer's determination of whether, in light of such facts, the [noncitizen] has established a credible fear of persecution or torture." 8 C.F.R. § 208.30(e)(1); *see* 8 U.S.C. § 1225(b)(1)(B)(iii)(II). A supervisory AO must review the determination before USCIS issues it. *See* 8 C.F.R. §§ 208.30(e)(7), 235.3(b)(2), (b)(7).

If the AO determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. §

1225(b)(1)(B)(ii). If the officer determines that the noncitizen does not have a credible fear of persecution, the officer shall order the noncitizen "removed from the United States without further hearing or review," unless the noncitizen requests review by an IJ. 8 U.S.C. §§ 1225(b)(1)(B)(iii)(I), (III). Review by an IJ is *de novo* and must include an opportunity for the noncitizen to be heard and questioned by the IJ, who also may take into evidence any relevant oral or written statement. 8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. §§ 1003.42(c), (d). The noncitizen may consult with a person of his or her choosing prior to the review, at no expense to the government and so long as it does not "unreasonably delay the process." 8 U.S.C. § 1225(b)(1)(B)(iv); *see* 8 C.F.R. § 1003.42(c). The review hearing "shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination . . . ." 8 U.S.C. § 1225(b)(1)(B)(iii)(III); *see* 8 C.F.R. § 1003.42(e). If the IJ determines that the noncitizen does not have a credible fear of persecution or torture, the IJ affirms the AO's determination and remands the case to DHS for execution of the expedited removal order. 8 C.F.R. § 1003.42(f) ("No appeal shall lie from a review of an adverse credible fear determination made by an immigration judge.").

Any noncitizen subject to these provisions "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

**B. Judicial Review of Expedited Removal Orders**

Congress has limited juridical review of expedited removal orders: "Without regard to the nature of the action or claim and without regard to the identity of the party or parties bringing the action, no court may . . . enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude [a noncitizen] in accordance with section 1225(b)(1) of this title

except as specifically authorized in [8 U.S.C. § 1252(e)] . . . ." 8 U.S.C. § 1252(e)(1)(A).

Section 1252(e)(2) permits judicial review of expedited removal orders through habeas proceedings but limits review to determinations of:

(A) whether the petitioner is [a noncitizen],

(B) whether the petitioner was ordered removed under [§ 1225(b)(1)], and

(C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is [a noncitizen] lawfully admitted for permanent residence . . . .

8 U.S.C. § 1252(e)(2); *see* 8 U.S.C. § 1252(a)(2)(A) (limiting judicial review of expedited removal orders to the exceptions provided in § 1252(e)).[4] The scope of the inquiry allowed under § 1252(e)(2)(B) is "limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the [noncitizen] is actually inadmissible or entitled to any relief from removal." 8 U.S.C. § 1252(e)(5). If a violation is found, the only allowable relief is a removal hearing pursuant to 8 U.S.C. § 1229a. 8 U.S.C. § 1252(e)(4)(B).

Section 1252(e)(3), titled "Challenges on validity of the system," limits jurisdiction as follows:

Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

---

[4] In addition, the Ninth Circuit has allowed due process claims collaterally attacking expedited removal orders in criminal cases where the noncitizen is charged with criminal reentry. *Pena v. Lynch*, 815 F.3d 452, 455-56 (9th Cir. 2015); *United States v. Raya-Vaca*, 771 F.3d 1195, 1202-1207 (9th Cir. 2014). This exception is "strictly limited" to criminal reentry cases, *Pena*, 815 F.3d at 456, and therefore it is inapplicable here.

REPORT AND RECOMMENDATION - 10

1   8 U.S.C. § 1252(e)(3)(A); *see United States v. Barajas-Alvarado*, 655 F.3d 1077, 1086 n.10 (9th

2   Cir. 2011) (declining to address "general attacks on the expedited removal process" because they

3   were barred by § 1252(e)(3)); *Li v. Eddy*, 259 F.3d 1132, 1136 (9th Cir. 2001) ("systemic

4   challenges are to be filed in the District of Columbia, and within 60 days of promulgation of the

5   expedited removal procedures"), *vacated as moot*, 324 F.3d 1109 (9th Cir. 2001).[5]

6          In *Thuraissigiam v. U.S. Department of Homeland Security*, 917 F.3d 1097 (9th Cir.

7   2019), *cert. granted*, 2019 WL 5281289 (Oct. 18, 2019), the Ninth Circuit held that § 1252(e)(2)

8   violates the Suspension Clause. The petitioner sought to challenge the procedures leading to his

9   expedited removal order, including that the AO and IJ on review "failed to elicit all relevant and

10  useful information" bearing on whether he had a credible fear of persecution or torture, and

11  "failed to consider relevant country conditions evidence." *Id.* at 1102. The core of his claim was

12  that "the government failed to follow the required procedures and apply the correct legal

13  standards when evaluating his credible fear claim." *Id.* at 1116. The district court dismissed for

14  lack of subject matter jurisdiction. *Id.* at 1102. The Ninth Circuit reversed, concluding that §

15  1252(e)(2) did not authorize jurisdiction over the petitioner's claims but that the Suspension

16  Clause required him to have a "meaningful opportunity to demonstrate that he is being held

17  pursuant to 'the erroneous application or interpretation' of relevant law." *Id.* at 1100 (quoting

18  *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302

19  (2001))). The court did not decide "what right or rights [the petitioner] may vindicate via use of

20

21

22

23

---

[5] *See Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1141 n.4 (9th Cir. 2008) (although "*Li* was vacated on mootness grounds . . . the case is analytically sound").

1    the writ," but remanded to the district court to exercise jurisdiction over the petitioner's "legal

2    challenges to the procedures leading to his expedited removal order."[6] *Id.* at 1119.

3    **C. Petitioner's Claims**

4          Petitioner challenges aspects of the credible fear interview, the AO's and IJ's negative

5    credible fear determinations, the timing of the Review Hearing, and his custody. The Court will

6    discuss each issue in turn.[7]

7                    *1.    Credible Fear Interview*

8          Petitioner raises several challenges to the credible fear interview, each of which is

9    unavailing. First, he argues that the AO did not explore how the attacks were tied to the BJP. It

10   appears Petitioner is alleging the AO failed to comply with 8 C.F.R. § 208.30(d), which provides

11   that the purpose of the credible fear interview is to elicit all relevant and useful information. This

12   claim fails, however, because Petitioner does not explain what information the AO failed to elicit

13   and how that information would have affected the credible fear assessment.

14         Second, Petitioner argues the AO improperly focused on his visa applications and spoken

15   languages because these topics did not bear on his fear of return to India. To the contrary, the AO

16   properly considered the inconsistencies between Petitioner's representations on his visa

17   applications and his statements during the interview. *See* 8 U.S.C. § 1158(b)(1)(B)(iii)

18   (credibility determination may be based on consistency between applicant's statements

19

20

21   _____

     [6] The Ninth Circuit expressly stated that it did not consider whether the Suspension Clause requires judicial review of the merits of the credible fear determination or factual challenges to an expedited removal order. *Thuraissigiam*,

22   917 F.3d at 1117 n.20, 1119 n.24.

23   [7] In his habeas petition, Petitioner makes several general allegations of wrongdoing on the part of the Government (*see generally* Pet.), but such general allegations are insufficient to entitle him to habeas relief and will not be discussed further.

1    "whenever made" and "the consistency of such statements with other evidence in the record,"

2    regardless of whether the inconsistency "goes to the heart of the applicant's claim").

3        Third, Petitioner contends the AO erred by failing to express concern that the CBP agents

4    interviewed him in Hindi, which he speaks only a little. Petitioner fails to identify any statute or

5    regulation that would require such concern, nor does Petitioner's claim establish a due process

6    violation. Rather, the fact that Petitioner participated in an interview in Hindi and stated that he

7    understood the CBP agents' questions (Lambert Decl., Ex. B) suggests that Petitioner did not

8    truthfully report the extent of his understanding of Hindi to the AO.

9        Finally, Petitioner asserts that the AO erred when she failed to dismiss the interpreter

10   after the interpreter interjected during the interview. Petitioner fails to point to any statute or

11   regulation that the AO violated, nor does he explain how the AO's alleged error amounted to a

12   due process violation. Petitioner does not establish grounds on which to grant his habeas petition.

13              *2.    Negative Credible Fear Determinations*

14       Petitioner raises three challenges to the negative credible fear decisions, none of which

15   prevail. First, he argues that there was no reasonable basis for the adverse credibility finding. The

16   AO, however, provided a reasoned explanation for the credibility determination in the Credible

17   Fear Determination Checklist, which was given to the IJ. Moreover, the paperwork Petitioner

18   received prior to the Review Hearing explained that he was found not credible because he made

19   inconsistent statements, and the AO's interview notes show the basis for this conclusion.

20   Petitioner's assertion that there was no reasonable basis for the adverse credibility finding thus

21   fails.

22       Second, Petitioner directly challenges the merits of the AO's and IJ's negative credible

23   fear determinations, arguing that he testified credibly. But as the Government contends,

1    *Thuraissigiam* did not establish that the Suspension Clause requires judicial review of the merits

2    of a credible fear determination. *Thuraissigiam*, 917 F.3d at 1117 n.20, 1119 n.24 (expressly

3    stating that the court did not consider whether the Suspension Clause requires judicial review of

4    the merits of the credible fear determination or factual challenges to an expedited removal order);

5    *Lopez-Mendoza v. Barr*, No. 19-1448, 2019 WL 6710861, at *5 (C.D. Cal. Sept. 11, 2019)

6    (finding no jurisdiction under *Thuraissigiam* to consider challenges to an IJ's factual

7    determinations or to reweigh the evidence). Under the present scope of *Thuraissigiam*, the Court

8    does not have jurisdiction over Petitioner's challenge to the merits of AO's finding that he was

9    not credible or the IJ's affirmance of this decision.

10    Finally, Petitioner argues that the IJ ignored his evidence packet, but the IJ entered the

11    packet into evidence, took testimony from Petitioner, and gave Petitioner's attorney an

12    opportunity to argue on his behalf. Petitioner's claim is not supported by the record.

13                    *3.    Timing of Review Hearing*

14    Petitioner alleges that the Review Hearing occurred after the statutory prescribed

15    deadline. But Petitioner does not explain how this harmed him, and the Court cannot envision

16    how a new Review Hearing—the relief Petitioner seeks—would remedy any perceived harm.

17    Accordingly, this is not a basis upon which to grant habeas relief.

18                    *4.    Custody*

19    Petitioner seeks release on bond. The expedited removal statute provides for his

20    mandatory detention until he is removed. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); *see Ms. L. v. U.S.*

21    *Imm. & Customs Enforcement*, 302 F. Supp. 3d 1149, 1159 n.3 (S.D. Cal. 2018) ("Individuals in

22    the expedited removal process who have not been found to have a 'credible fear of persecution'

23    for asylum purposes are subject to mandatory detention."). Under the statute and regulations, he

1    may be released only if he is granted parole, i.e., released under narrowly prescribed

2    circumstances, such as "urgent humanitarian reasons or significant public benefit[,]" 8 U.S.C. §

3    1182(d)(5)(A), medical emergency, or a "legitimate law enforcement objective," 8 C.F.R. §

4    235.3(b)(2)(iii). In addition, due process requires a bond hearing only when § 1225(b) detention

5    becomes "unreasonably prolonged." *Banda v. McAllenan*, 385 F. Supp. 3d 1099, 1106 (W.D.

6    Wash. 2019). To determine whether detention has become unreasonably prolonged, the Court

7    must conduct a case-specific analysis that considers: "(1) the total length of detention to date; (2)

8    the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal

9    proceedings caused by the detainee; (5) delays in the removal proceedings cause by the

10   government; and (6) the likelihood that the removal proceedings will result in a final order of

11   removal." *Id.* (quoted source omitted). Having considered all these factors, the Court concludes

12   that Petitioner's detention, which is currently less than six months and is likely to end with his

13   removal shortly after this case is dismissed, is not unreasonably prolonged and does not violate

14   his Fourth or Fifth Amendment rights, as he alleges. This claim should be dismissed.

## IV.    CONCLUSION

16        The Court recommends that the Government's motion to dismiss (dkt. # 5) be

17   GRANTED, Petitioner's habeas petition (dkt. # 2) be DENIED, the stay of removal (dkt. # 3) be

18   VACATED, and this action be DISMISSED with prejudice. A proposed order accompanies this

19   Report and Recommendation.

20        Objections to this Report and Recommendation, if any, should be filed with the Clerk and

21   served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

22   Recommendation is signed. Failure to file objections within the specified time may affect your

23   right to appeal. Objections should be noted for consideration on the District Judge's motions

calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on February 28, 2020.

Dated this 13th day of February, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge